Per Curiam.
 

 The lessors of the plaintiff, on the trial of this ejectment, produced a grant from North Carolina, dated May 31st, 1788, for the lands in question, and proved the defendants to have been in possession at the date of the grant. The defendant produced a grant from the State of Tennessee for a part of this tract. The tract contained 905J acres, instead of 640, mentioned in his grant to be conveyed to him by North Carolina. Green, under the act of 1806, ch. 1, § 20, notified principal surveyor to resurvey it, on the 3d of February, 1807. On the trial, the defendant offered
 
 *597
 
 to prove, by parol, that to prevent the excess of said land from being entered by anybody else, John Rains, the lessee of the plaintiff, agreed with William Rains in his, lifetime that the excess of said tract should be thrown off, and was then thrown off at the place which was afterwards appropriated by said entry and grant in the name of Pillow, for the benefit of the said William Rains in his lifetime, and that said John Rains agreed that said entry should be made as above; that is to say, adjoining the east boundary of John Rains, and included said defendants’ possession. This evidence * the court rejected. The grant produced by the defendants was by the State of Tennessee to Abner Pillow for 274 acres, part of said 905^ acres, dated 26th January, 1808, and A. Pillow, by deed of the first of October, 1812, conveyed to the defendants.
 

 The Circuit Court, in charging the jury, directed them to find for the lessor of the plaintiff if the lines described in his grant included the land in question; for although, said the judge, the law of 1806 is a constitutional law, yet, the same being repealed before the grant issued to Pillow, that the same is void, and that the defendants under said entry and grant could acquire no title.
 

 This court is of opinion that the said judgment rendered by the Circuit Court for the plaintiff, should be affirmed.
 

 These lands having been once granted by the State of North Carolina, cannot be taken away for supposed fraud founded upon the excess, unless, by course of law, an issue had been made up and left to a jury, in which would either be established or rejected those facts which were urged as causes for invalidating the grant; and unless, also, a competent judicial tribunal had decided that such facts, when established, were sufficient in law to invalidate the said grant, either in whole or in part. “ No freeman shall be disseised of his freehold liberties or privileges, or outlawed or exiled, or in any manner destroyed of his life, liberty, or property, but by the judgment of his peers, or the law of the land ; ” that is, in due course of law, and by judicial proceedings regularly commenced and prosecuted to judgment. Moreover, the law of 1806 provided for entering the excess, if it exceeded an excess of one fourth ; but it was repealed in a few months afterwards, and before the grant issued to Pillow. He had no right, under the provisions of the act of 1806, to obtain it.
 

 
 *598
 
 ' * It may be that an enormous and very extraordinary excess might, upon trial before a jury, be left to them as a circumstance from which fraud might be inferred, but could not be considered of itself an actual fraud, and thereupon the grant became void, if so declared by the Legislature. For then who should determine the quantity of excess that should vitiate the grant? By the same reason that an excess of more than one fourth might be fixed upon, any excess at all might be fixed on, and men’s estates be in perpetual jeopardy from the government, because of mistakes committed by the officers of government; for- when mistakes, the law is that the grantee shall' not be responsible. Can he yet be acted upon by a retrospective statute, when by the Bill of Rights (§ 20) it is provided, “ that no retrospective law or laws impairing the obligation of contracts shall be made ” ?
 

 It was because of the unconstitutional tendency, as well as the impolicy of the law of 1806, in the particulars we are now contemplating, that the Legislature which next met after the passage of the same, and before it was carried into execution, were induced to suspend and then repeal
 
 it;
 
 which former they did on the first day of their session.
 
 Affirm the judgment.
 

 See
 
 Houston
 
 v.
 
 Pillow,
 
 1 Yer. 488;
 
 Hickman
 
 v.
 
 Tait,
 
 Cooke, 460; King’s Digest, 8019-22.